**Nathan G. Wagner**
SIEFERT & WAGNER, PLLC
1135 Strand Avenue, Suite A
Missoula, Montana 59801
Telephone:  406-226-2552
Facsimile:   406-226-2553
E-Mail:       nate@swl.legal; mail@swl.legal

*Attorney for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| ALEISHA KRASKE,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF MONTANA; BRENT LASHINSKI; MARTI VINING; PATRICIA ROGERS; MICHAEL SOLEM; DOES I-X,<br><br>Defendants. | **COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Aleisha Kraske, for her Complaint against Defendants the State of Montana, Brent Lashinski, Marti Vining, Patricia Rogers, Michael "Mike" Solem, and Does 1-10, alleges as follows:

### PARTIES

1. Aleisha Kraske ("Kraske") is an individual residing in Lewis and Clark County, Montana.

2. The State of Montana ("Montana") was, at all times relevant, liable for the

1

conduct of the Montana Department of Public Health and Human Services ("DPHHS").

3. Upon information and belief, Defendant Brent Lashinski ("Lashinski") is an individual residing in Helena, Montana and was, at all times relevant hereto, an employee and Child Protection Specialist Supervisor for the Montana Child and Family Services Division ("CFSD").

4. Upon information and belief, Defendant Marti Vining ("Vining") is an individual residing in Great Falls, Cascade County, Montana and was, at all times relevant hereto, the Administrator for Montana Child and Family Services Division.

5. Upon information and belief, Defendant Patricia Rogers ("Rogers") was, at all times relevant, a resident of Helena, Lewis and Clark County, Montana.

6. Defendant Michael "Mike" Solem ("Solem") was, at all times relevant, a resident of Helena, Lewis and Clark County, Montana. He is the former partner of Plaintiff, and the father of their minor child, E.S.

7. Defendants Does 1-10 are other individuals or entities who may be liable to Plaintiff for damages.

**JURISDICTION AND VENUE**

8. Jurisdiction and venue are proper in the United States District Court, for the District of Montana, Helena Division, because the events that gave rise to this Complaint occurred in Helena, Montana, and one or more of the Defendants reside

in Lewis and Clark County.

## GENERAL ALLEGATIONS

9. Plaintiff re-alleges the preceding paragraphs.

10. In late 2017, Solem told Kraske that he had begun dating Defendant Rogers and that he would be introducing their minor child to her on Christmas day.

11. Kraske informed Solem that she did not believe that was a good idea and that she had concerns about their child being around Rogers due to Rogers' past drug abuse, history of parenting failures, close associations with individuals who have been convicted of trafficking methamphetamine, and lengthy history with Lewis and Clark County District Court.

12. Solem ignored Kraske's concerns and introduced their minor child to Rogers on Christmas day.

13. Shortly thereafter, E.S. began expressing fear about being in Solem's care due to neglect and violence she had endured from Rogers' minor son, Rogers, and Solem. E.S. reported those fears to her kindergarten teacher, school counselor, and counselor.

14. Defendants Solem and Rogers ignored all concerns from Kraske regarding the safety of E.S. and began harassing Kraske and threatening her employment.

15. In February of 2018, Rogers contacted Kraske's employer, the Montana Department of Justice (DOJ) Attorney General's Office, and alleged that Kraske had

used the DOJ's database to gather confidential information regarding Defendant Rogers, and Rogers requested that Kraske be disciplined. Rogers' allegations were false and defamatory and were made only to cause harm to Kraske. Kraske was aware of Rogers' history based on numerous public documents readily available including Rogers' admissions to Lewis and Clark County District Court to substantial drug abuse, custodial interference, knowledge of methamphetamine trafficking, neglect of her own children, and parenting issues.

16. When Kraske informed Defendant Solem that Rogers had contacted her employer he responded, "I didn't do it."

17. On or about July 5, 2018, Kraske filed a Notice of Intent to move with the Lewis and Clark County District Court notifying Solem that she intended on moving out of Helena and taking their daughter with her to Indiana to be closer to family and medical care as E.S. was born with a birth defect requiring several surgeries and ongoing specialized medical care. Solem was served with the Notice of Intent on or about July 21, 2018.

18. Five days later, on or about July 26, 2018, Defendant Lashinski, then Child and Family Services Supervisor, wrote a reference letter for Rogers on State of Montana Department of Public Health and Human Services letterhead, and in his official capacity as CFSD supervisor. The letterhead contained the names of Governor Bullock, and DPHHS Director, Sheila Hogan.

19. Kraske received a copy of Lashinski's letter in response to discovery requests she had served on Solem in their parenting matter.

20. Lashinski's letter indicated that Rogers has no substantiated reports of child abuse or neglect in the state of Montana, and that Lashinski personally knew Rogers for over two years, and that she was a potential placement to her children's half-sibling who was in foster care at one time. The letter further states that Lashinski has "no reason to doubt that Ms. Rogers is a fully capable and safe parent who would have been used as a placement option for the half-sibling had she not been returned home."

21. Kraske later learned that the letter potentially contained false information, and that Rogers was not considered for placement for the child referenced therein.

22. On or about December 19, 2018, Kraske's then attorney sent a Subpoena Duces Tecum to DPHHS requesting information relating to Lashinski's letter, and his intervention into the parties' civil matter regarding a move out of state.

23. To date, DPHHS has failed and neglected to respond to the subpoena issued by Kraske's then-attorney, nor attempted to file a motion to quash it.

24. In January of 2019, Kraske's then-attorney filed a Motion to Appoint a Guardian ad Litem for E.S.

25. The Court granted Kraske's motion over Defendant Solem's objection and appointed a GAL on or about January 23, 2019. The GAL issued her report on or

about April 30, 2019. The GAL detailed Solem and Rogers' lengthy illegal drug histories that were confirmed through court documents and discovery and opined that the minor child should be allowed to relocate with Kraske to be close to family in Indiana and necessary medical care.

26. A hearing was held on July 9-10, 2019, and the district court eventually issued Findings of Fact and Conclusions of Law denying Kraske's request to relocate with her daughter.

27. The district court relied heavily on Lashinski's letter in making its determination and did not consider the other evidence presented such as the GAL's testimony and report as well as Kraske's testimony given at the hearing.

28. Around the time the FOF/COL was issued, Rogers began frequenting the park across from Kraske's home. If Kraske left her home, Rogers would follow her. On one occasion, Rogers contacted the Helena Police Department stating that Kraske was stalking her.

29. A detective contacted Kraske and, after Kraske offered to provide video evidence of Rogers showing up to her home and following her, the matter was dropped and both parties were advised to avoid each other.

30. Kraske appealed the decision made by the district court.

31. During the appeal process, Kraske filed a complaint with the Montana Department of Justice's Ombudsmen on or about November 20, 2019, regarding the

letter issued by Lashinski.

32. On or about December 20, 2019, Kraske was notified that Traci Shinabarger would be assigned to her Ombudsmen request.

33. In June of 2020, Kraske reached out to Ms. Shinabarger to see where her request stood and received an "address not found," message from the state's email system. Kraske then reached out to the DOJ general email address and received a message from Gala Goodwin stating that she was in the process of reviewing all of Ms. Shinabarger's cases and that she would be reviewing Kraske's case as well.

34. On July 2, 2020, Kraske received a formal response from Ms. Goodwin stating that the issues raised were a personnel matter and that she would be sharing the issues with Marti Vining, the then Administrator of Child and Family Services Division.

35. On July 9, 2020, Kraske emailed Vining and Vining never responded. Kraske continued to attempt to contact Vining by phone and email. Finally, in January of 2021, Kraske received a phone call from Vining wherein Vining expressed concern regarding Lashinski's letter and stated she would look into the matter. She requested that Kraske send her all the documents she had sent to the DOJ ombudsmen. Kraske sent the documents via email on or about January 4, 2021. Kraske contacted Vining again on January 21, 2021, to see if she had a chance to review the materials, but Vining never responded.

36. After receiving no response from Vining, Kraske sent a letter to the DPHHS Deputy Director, Laura Smith, on or about July 19, 2021, along with a formal request for an investigation into Lashinski's letter, as well as a FOIA request. Ms. Smith never opened or downloaded the attachments sent to her via the state's file transfer system.

37. At around this same time period, Kraske's husband, Justin Kraske, was applying for a staff attorney position with the DPHHS. When DPHHS offered Mr. Kraske a job, he disclosed this matter as a potential conflict to DPHHS hiring him. It was only at this time that DPHHS began looking into Lashinski's letter.

38. On or about August 16, 2021, Ms. Smith finally responded to Kraske's email and stated that the request was being staffed. A few days later, Kraske was contacted by staff attorney, Robert Lishman, and asked to resend the exhibits cited in her letter. Kraske sent Mr. Lishman the materials, and Mr. Lishman confirmed receipt on August 18, 2021.

39. On or about August 24, 2021, Kraske received a letter from DPHHS staff attorney, Caroline Warne, regarding her request for investigation and FOIA. Ms. Warne's response stated that no records regarding Solem, Rogers, or Lashinski could be released. Ms. Warne stated that Lashinski had a right to privacy in his personnel records and absent a court order they would not be released. She stated that she could disclose his length of employment and position held as well as claims for leave,

excepting reasons for leave.

40. In the letter, Ms. Warne stated that she was unable to determine whether Kraske's subpoena had been served on DPHHS, or just mailed to DPHHS, and further stated that if it had been served on DPHHS, they would have objected asking for an *in-camera* review of the documents requested.

41. As a state employee, Lashinski was prohibited from using his official capacity to further personal interests. Lashinski used his official capacity to write an unauthorized false reference letter regarding Rogers. Lashinski used state letterhead, state mail, state time, and his official capacity to send the letter which was a clear abuse of his position as a state employee and supervisor of CFSD.

42. Further, Lashinski, through Defendant Solem's attorney, moved the First Judicial District Court to appear by telephone at the hearing concerning Kraske's and Solem's child, and offered to testify regarding the custody of the child, in opposition to Kraske's petition to move the child to Indiana for family and medical care reasons. Solem's attorney was not a DPHHS attorney when she filed the motion requesting that Lashinski appear telephonically to testify in support of Solem and Rogers.

43. Due to Lashinski's willingness to testify, and the DPHHS's failure to respond to Kraske's valid subpoena, Leanora Overturf, a CASA volunteer, was subpoenaed to testify in opposition to Lashinski, as Ms. Overturf was the CASA in the minor

child's DNC case, which Defendant Lashinski's letter referenced. Ms. Overturf's CASA file contained evidence that Lashinski's statements in his letter were false. However, at the last minute, Solem decided not to call Lashinski to testify and, therefore, Ms. Overturf was not called for rebuttal.

44. Lashinski violated numerous laws and policies when he disclosed confidential information in his reference letter for Rogers including, but not limited to, Mont. Code Ann. § 41-3-205, CFS Policy 202-1, which states that investigation reports of abuse and neglect are not to be shared with anyone other than the immediate family, and for the purpose of placement, and CFS Policy 202-2, which states that reports of child abuse and neglect are confidential and employees shall not look up information on persons in the CAPS system unless there is a work-related reason to do so, and whether the report is secured or not does not give agency staff permission to review information stored in CAPS for which the agency staff has no work-related reason to know the information. The unauthorized disclosure of records under Mont. Code Ann. § 41-3-205 is a misdemeanor criminal offense.

45. Lashinski had no work-related reason to know the information he submitted in his letter regarding Rogers.

46. Lashinski's letter demonstrates that he was not a neutral third party as is required of CFSD supervisors. Lashinski's actions undermined his position as CFSD supervisor and damaged the public's trust that CFSD will carry out its duties in a

non-biased and professional manner.

47. After receiving Ms. Warne's response, on or about September 8, 2021, Kraske sent her a response letter outlining additional concerns spurred by Ms. Warne's response. Ms. Warne failed to respond to Kraske regarding the FOIA request and Kraske's concerns. Additionally, Ms. Warne failed to identify that she had a conflict of interest as she previously represented Rogers in her divorce case. Due to Ms. Warne's conflict of interest and her failure to respond to Kraske's concerns, Kraske then contacted Ms. Stannard and Mr. Parker, DPHHS's Chief and Deputy Chief Legal counsel on or about January 17, 2022. Kraske wrote to them in the hopes that they could help her resolve her outstanding request for information and take her request seriously.

48. On or about January 20, 2022, Kraske received a phone call from Chad Parker regarding her request. Mr. Parker stated that he would be handling her request from that point further.

49. During one of Kraske's phone calls with Mr. Parker, Mr. Parker admitted to Kraske that he believed some liability existed as to the Court relying on Lashinski's letter in its Order denying Kraske's request to move.

50. On or about March 25, 2022, Kraske received a letter from Mr. Parker responding to her records request. Parker stated that through his investigation he found "no evidence that [Mr. Lashinski] was given authorization to draft the letter

11

as official correspondence on DPHHS letterhead, which contains…the former Governor's and DPHHS Director's names," and that the letter was "inappropriate," and that he "[does] not believe Mr. Lashinski's July 2018 letter should have been issued."

51. As a result of Mr. Parker's March 25, 2022, letter, Kraske became aware that she had been the victim of a conspiracy to commit unlawful and improper conduct on the part of Lashinski, DPHHS, Solem, Rogers, and the State of Montana.

52. Mr. Parker's letter asked that Kraske accept Mr. Parker's correspondence as a rescission of the letter, however it does not appear that Rogers was ever contacted to retrieve the reference letter from her, or that DPHHS intended to set the District Court record straight by informing the Lewis and Clark District Court that the letter should not have been issued or relied upon.

53. The letter further denied Kraske's request for documents stating that the legal analysis contained in Ms. Warne's letter was legally sound. The letter failed to recognize that Lashinski's letter disclosed third-party information not related to Rogers as it disclosed placement information that should only be contained within a closed dependent and neglect proceeding, and that Lashinski was willing to testify in a civil custody matter, regarding a Notice of Intent to Move, to which neither DPHHS, nor CFSD, were a party.

54. Mr. Parker's letter attempts to limit DPHHS's liability with regard to

Lashinski's improper and damaging actions despite the fact that Ms. Vining could have limited DPHHS's liability when she became aware of Lashinski's actions. Further, to date, the State has failed to revoke the letter from Ms. Rogers or inform the court of Lashinski's improper actions.

55. As a result of Lashinski's letter, along with the false allegations made by Solem and Rogers, Kraske has suffered grave damages including a Court Order denying her request to relocate with E.S., and her credibility in front of the Lewis and Clark County District Court, and Supreme Court, was diminished. Kraske fears that because of Lashinski and CFSD being a reference for Rogers and Solem, that going forward CFSD may fail to investigate alleged abuse and neglect by Rogers and Solem even if mandatory reporters such as school officials, health care providers, or counselors contact CFSD about drug, child abuse, or neglect issues. Kraske has been further damaged by Defendants' actions because, at all times relevant, Kraske was employed as a DOJ paralegal, but found that the events giving rise to this action wreaked havoc on her professional life, and she was forced to seek out non-legal employment. Solem, Rogers, and Lashinski, attempted to conceal and erase the substantial ongoing drug and abuse issues identified in the GAL report and public court records by submitting false information and testimony to a Court, which it then relied on to the detriment of Kraske and E.S. who was experiencing abuse and neglect.

## COUNT I: CIVIL CONSPIRACY
### (Plaintiff v. All Defendants)

56. Plaintiff realleges the preceding paragraphs.

57. The conduct alleged above amounts to a civil conspiracy to unlawfully deprive Kraske of her rights as discussed herein.

58. Defendants Solem, Rogers, and Lashinski entered into an agreement under which Lashinski would abuse his authority and act without authorization in order to harm Kraske and deprive her of her rights as described herein.

59. Defendant Lashinski engaged in an overt act in furtherance of this plan by authoring the improper July 26, 2018, letter which contained false information in support of Solem and Rogers, and against Kraske.

60. Defendant Lashinski's unlawful conduct in furtherance of the agreement between Lashinski, Solem, and Rogers, harmed Kraske by depriving her of her rights, inflicting emotional distress, and other damages as described herein.

61. Kraske is entitled to an award of damages to compensate her for the harm she has suffered as a result of the conspiracy described herein.

62. The Defendants' conspiratorial acts were done with malice in a deliberate attempt to harm Kraske.

63. Kraske is entitled an award of punitive damages to punish and deter the Defendants from future wrongdoing.

//

## COUNT II: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Plaintiff v. All Defendants)

64. Plaintiff realleges the preceding paragraphs.

65. The conduct described above was done maliciously and with the intention of inflicting emotional distress on Kraske.

66. Under the circumstances described above, serious, or severe emotional distress to Kraske, was the reasonably foreseeable consequence of the intentional and malicious conduct of the Defendants.

67. Kraske has suffered severe emotional distress as a result of the conduct of the Defendants.

68. Kraske is entitled to an award of compensatory damages for emotional distress.

69. Kraske is entitled to an award of punitive damages for emotional distress because the Defendants' conduct alleged above was done maliciously with intent to harm Kraske.

## COUNT III: NEGLIGENCE
### (Plaintiff v. State of Montana, Lashinski, and Vining)

70. Plaintiff realleges the preceding paragraphs.

71. Alternatively, the acts and omissions described above constitute negligence.

72. The Defendants owed a duty to Kraske to use reasonable care not to cause injury to her.

73. The Defendants' actions described above were done without the exercise of ordinary care.

74. Kraske was injured by the Defendant's negligence.

75. Kraske is entitled to an award of compensatory damages arising from the harm that was caused by the negligence of the Defendants.

76. Kraske is entitled to an award of punitive damages due to the Defendants' willful and reckless indifference to the likelihood that their actions would harm Kraske.

## COUNT IV: § 1983 CLAIMS
### (Plaintiff v. Lashinski and Vining)

77. Plaintiff realleges the preceding paragraphs.

78. Kraske has a fundamental right to control the upbringing of minor E.S. *Meyer v. Nebraska*, 262 U.S. 390, (1923); *Pierce v. Society of Sisters*, 268 U.S. 510 (1925).

79. The Defendants' actions described above have deprived Kraske of her right to control the upbringing of E.S, including where she would reside with E.S., and where E.S. would receive medical care.

80. The Defendants' conduct violates Kraske's right both to procedural and substantive due process.

81. Kraske is entitled to an award of damages to compensate her for violations of her fundamental constitutional rights.

82. Kraske is entitled to an award of punitive damages due to the Defendants'

willful and reckless indifference to the likelihood that their actions would harm Kraske.

83. Kraske is entitled to an award of attorney's fees under 42 U.S.C § 1988.

## COUNT V: DECEIT
### (Plaintiff v. State of Montana, Solem, Rogers, and Lashinski)

84. Plaintiff realleges the preceding paragraphs.

85. Under Montana law, deceit is defined as: the suggestion as a fact of that which is not true by one who does not believe it to be true; the assertion as a fact of that which is not true by one who has no reasonable ground for believing it to be true; the suppression of a fact by one who is bound to disclose it or who gives information of other facts that are likely to mislead for want of communication of that fact; or promise made without any intention of performing it.

86. The Defendants committed deceit against Kraske as described above.

87. Kraske has suffered harm as a result of the conduct described above.

88. Kraske is entitled to an award of damages arising from the deceit alleged herein.

WHEREFORE, Plaintiff prays for the following relief:

   A. For judgment in Plaintiff's favor, against Defendants, and each of them;

   B. For general damages in an amount to be proven at trial;

   C. For actual and compensatory damages resulting from Defendants' conduct;

   D. For statutory damages where permissible;

E. For punitive damages to the extent allowed by law, and in an amount to be proven at trial;

F. For reasonable attorney's fees and costs as permitted by law; and

G. For all other relief deemed proper and just.

## JURY DEMAND

Plaintiff requests trial by jury on all issues appropriate for jury trial.

DATED this 20th day of March, 2024.

                SIEFERT & WAGNER, PLLC

                By: /s/ Nathan G. Wagner
                      Nathan G. Wagner
                      *Attorney for Plaintiff*