IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| ALEISHA KRASKE,<br><br>Plaintiffs,<br><br>vs.<br><br>STATE OF MONTANA, BRENT LASHINSKI, MARTI VINING, PATRICIA ROGERS, MICHAEL SOLEM, and DOES I-X,<br><br>Defendants. | **CV-24-25-H-BMM-KLD**<br><br><br>**ORDER** |

## INTRODUCTION

Plaintiff Aleshia Kraske ("Kraske") filed this action against Defendants State of Montana ("Montana"), Brent Lashinski ("Lashinski"), Marti Vining ("Vining"), Patricia Rogers, and Michael Solem ("Solem"). (Doc. 1.) Plaintiff asserts claims for civil conspiracy, intentional infliction of emotional distress, negligence, § 1983 violations, and deceit. (*Id.* ¶¶ 56–88.) Defendant Solem filed a motion to dismiss Plaintiff's civil conspiracy, intentional infliction of emotional distress, and deceit claims. (Doc. 14.) Defendants Montana, Vining, and Lashinski filed a motion to dismiss all of Plaintiff's claims. (Doc. 22.) Plaintiff opposes the motions. (Doc. 21; Doc. 29.) The Court held a hearing on the motions September 24, 2024. (Doc. 38.)

1

## BACKGROUND

Plaintiff Aleisha Kraske ("Kraske") and Defendant Michael Solem ("Solem") were formerly in a relationship. (Doc. 1, ¶ 6.) Kraske and Solem share a minor child, E.S. (*Id.*) Defendant Patricia Rogers ("Rogers") and Solem began dating in 2017. (*Id.*, ¶¶ 5, 10.) Kraske raised concerns to Solem about their child being around Rogers due to Rogers's character and criminal history. (*Id.*, ¶ 11.) E.S. reported experiencing neglect and violence from Rogers, from Rogers's minor son, and from Solem. (*Id.*, ¶ 13.) Solem and Rogers ignored Kraske's concerns and began harassing Kraske. (*Id.*, ¶ 14.)

In February 2018, Rogers contacted Kraske's employer, the Montana Department of Justice ("DOJ") Attorney General's Office, and alleged that Kraske had used the DOJ's database to gather confidential information about Rogers. (*Id.*, ¶ 15.) Rogers requested that Kraske be disciplined. (*Id.*) Kraske alleges that Rogers's allegations were false and defamatory, and she only made them to harm Kraske. (*Id.*)

In July 2018, Kraske filed a notice of intent to move with the Montana state district court, Lewis and Clark County, to notify Solem that Kraske intended to move from Helena, Montana, to Indiana with E.S. (*Id.*, ¶ 17.) E.S. was born with a birth defect and required ongoing specialized medical care. (*Id.*) Kraske wanted to be closer to family and for her daughter to be closer to specialized medical care. (*Id.*)

Defendant Brent Lashinski ("Lashinski"), then a Child and Family Services Supervisor for the State of Montana Department of Public Health and Human Services ("DPHHS"), wrote a reference letter for Rogers on July 26, 2018. (*Id.*, ¶ 18.) The letter stated that Lashinski personally had known Rogers for over two years. (*Id.*, ¶ 20.) Lashinski indicated that Rogers had been considered a potential placement for her children's half-sibling who was in foster care. (*Id.*) Lashinski believed that Rogers was "fully capable" of being a "safe parent." (*Id.*) Kraske later learned that the letter may have contained false information and that Rogers had not been considered a placement for the child mentioned in the letter. (*Id.*, ¶ 21.) Kraske sent a subpoena in December 2018 to DPHHS requesting information relating to Lashinski's letter and Lashinski's attempt to interfere with the parties' custody matter. (*Id.*, ¶ 22.) DPHHS has not responded to the subpoena. (*Id.*, ¶ 23.)

Kraske filed a motion to be guardian ad litem for E.S. in January 2019. (*Id.*, ¶ 24.) Kraske's motion was granted on January 23, 2019. (*Id.*, ¶ 25.) The district court denied Kraske's request to relocate her daughter to Indiana. (*Id.*, ¶ 26.) Kraske alleges that the Montana state district court relied heavily on Lashinski's letter from July 2018. (*Id.*, ¶ 27.) Kraske appealed the decision. (*Id.*, ¶ 30.)

Rogers began frequenting the park across from Kraske's home in July 2019. (*Id.*, ¶ 28.) Rogers contacted the Helena Police Department, to report that Kraske was stalking her. (*Id.*) Kraske was contacted by a detective and provided video of

3

Rogers showing up at her home and following her. (*Id.*, ¶ 29.) The detective told both parties to avoid each other and dropped the matter. (*Id.*)

Kraske filed a complaint with the Montana DOJ Ombudsmen in November 2019 regarding Lashinski's letter. (*Id.*, ¶ 31.) Kraske received a response regarding the complaint in July 2020, stating the letter raised issues that were a personnel matter, and they would be shared with Defendant Marti Vining ("Vining"), then the Administrator of Child and Family Services Division. (*Id.*, ¶ 34.)

Kraske attempted to contact Vining throughout the remainder of 2020. (*Id.*, ¶ 35.) Kraske received a phone call from Vining in January 2021. (*Id.*) Vining expressed concern about Lashinski's letter and asked Kraske to send all the documents she had originally sent to the DOJ ombudsmen. (*Id.*) Kraske never heard back from Vining after sending the documents. (*Id.*)

In July 2021, Kraske sent a letter to DPHHS Deputy Director, Laura Smith. (*Id.*, ¶ 36.) Kraske requested a formal investigation into Lashinski's letter and made a FOIA request. (*Id.*) Director Smith responded to Kraske in August 2021, notifying Kraske that her request was being staffed. (*Id.*, ¶ 38.) Kraske received a letter on August 24, 2021, from a DPHHS staff attorney stating no records regarding Solem, Rogers, or Lashinski could be released. (*Id.*, ¶ 39.) The staff attorney also stated that DPHHS could not determine whether Kraske's subpoena from 2018 had been served on DPHHS. (*Id.*, ¶ 40.)

Kraske responded to the staff attorney and reiterated her concerns on September 8, 2021. (*Id.*, ¶ 47.) Kraske did not receive a response. (*Id.*) Kraske wrote Stannard and Parker, DPHHS's chief and deputy chief legal counsel on January 17, 2022. (*Id.*) Parker called Kraske on January 20, 2022, and stated he would handle her request. (*Id.*, ¶ 48.) Parker wrote Kraske on March 25, 2022, stating that Lashinski's letter was not authorized, inappropriate, and should not have been issued. (*Id.*, ¶ 50.)

Kraske alleges that Lashinski used his official capacity to further personal interests. (*Id.*, ¶¶ 41–46.) Kraske further alleges she was the victim of a conspiracy between Lashinski, DPHHS, Solem, Rogers, and the State of Montana. (*Id.*, ¶ 51.) Kraske asserts that she suffered grave damages related to Lashinski's letter and the actions of the other Defendants. (*Id.*, ¶ 55.)

## STANDARD OF REVIEW

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires claimants to include in their complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint under the plausibility pleading standard of Rule 8(a)(2). *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal proves appropriate under Rule 12(b)(6) where the complaint fails to state a claim upon which relief can be granted. *Mendiondo v. Centinela Hospital*

*Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). A court may dismiss a complaint "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

A complaint must contain sufficient factual matter to state a plausible claim for relief on its face to survive a Rule 12(b)(6) motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim proves plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard does not require probability, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A court must "take[] as true and construe[] in the light most favorable to plaintiffs" all factual allegations set forth in the complaint. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation marks omitted).

Courts may, in ruling on a motion to dismiss, rely on documents "incorporated by reference" in a complaint if the complaint refers "extensively to the document" or the document "forms the basis of the plaintiff's claim." *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 511 (9th Cir. 2013); *see also Parrino v. FHP, Inc.*, 146 F.3d 699 (9th Cir. 1998) (holding that a district court ruling on a motion to dismiss "may consider documents whose contents are alleged in a complaint and

6

whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading").

## DISCUSSION

Defendants argue that Plaintiff's claims should be dismissed under four theories. Defendants argue that the statute of limitations bars Plaintiff's claims and that Plaintiff lacks standing. (Doc. 15 at 10–18; Doc. 23 at 8–17.) Defendant Solem separately argues that Plaintiff fails to state a claim under Rule 12(b)(6). (Doc. 15 at 18–27.) Defendants State of Montana, Vining, and Lashinski argue that the doctrine of collateral estoppel bars Plaintiff's claims. (Doc. 23 at 17–20.) The Court can resolve both motions on the standing issue in favor of the Defendants and will not address the other arguments.

### I.   Whether Kraske has met Article III standing requirements.

Defendants argue that Plaintiff lacks standing based on the tenuous nature of the causal link between the alleged conduct and her asserted injuries. (Doc. 15 at 15–17; Doc. 23 at 14–17.) Defendants argue that the Lashinski letter never discussed Plaintiff, her daughter, or her ex-husband. Defendants next contend that the Montana state district court never relied on the letter. Defendants assert that this lack of reliance demonstrates that Plaintiff cannot show a causal link to meet the Article III standing requirement.

7

A plaintiff must meet three requirements to have Article III standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A plaintiff must show first that they have suffered an injury. *Friends of the Earth, Inc. v. Laidlaw Ent'l Serv., Inc.*, 528 U.S. 167, 180–81 (2000). The injury must be a "concrete and particularized . . . invasion of a legally protected interest" that is "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560–61. A plaintiff must show second that their injury "fairly can be traced to the challenged action of the defendant, and not an injury that results from the independent action of some third party not before the court." *Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 41–42 (1976). "The 'causation chain does not fail solely because there are several links' or because a single third party's actions intervened" *O'Handley v. Weber*, 62 F.4th 1145, 1161 (9th Cir. 2023) (quoting *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011)). A causal chain must be plausible, however, and more than "hypothetical or tenuous." *Nat'l Audubon Soc., Inc. v. Davis*, 307 F.3d 835, 849 (9th Cir. 2002) (citing *Autolog Corp. v. Regan*, 731 F.2d 25, 31 (D.C. Cir. 1984)). A plaintiff must show finally that the injury is "likely to be redressed by a favorable decision." *Simon*, 436 U.S. at 41–42. Redressability "must be likely, as opposed to merely speculative." *Lujan*, 504 U.S. at 561 (internal quotations and citation omitted).

Three cases help resolve the Article III standing issue. In *Doe v. Holocomb*, a transgender man sought to change his name. 883 F.3d 971, 974–75 (7th Cir. 2018). The plaintiff was originally from Mexico and was granted asylum in 2015. *Id.* The Indiana statute governing name changes required those seeking a name change to provide proof of U.S. citizenship. *Id.* The plaintiff sued to challenge the statute's constitutionality because, as an asylee, he could not provide proof of citizenship. *Id.* The plaintiff sued Indiana's Governor, Attorney General, Executive Director of Indiana Supreme Court Division of State Court Administration, and the Marion County Clerk of Court. *Id.*

The Seventh Circuit determined that the Eleventh Amendment barred suit against the governor, attorney general and executive director. *Id.* at 976 – 79. The Seventh Circuit ruled that the plaintiff had failed to show the causation element of standing necessary to sue the Clerk of Court. *Id.* at 978–79. The plaintiff lacked standing because the Clerk of Court "has no power to grant or deny a petition." *Id.* at 797. Without showing "that the clerk has any authority in the name change process, [the plaintiff] has failed to show that his injury is fairly traceable to the Clerk's action of processing petitions." *Id.*

The plaintiff in *Isabel v. Ragan* sued the Arizona Secretary of State, Maricopa County Recorder, and Maricopa County regarding Arizona's 2016 election cycle voter registration deadline of October 10, 2016. 394 F. Supp. 3d

966, 969–70 (D. Ariz. 2019), *aff'd on other grounds*, 987 F.3d 1220 (9th Cir. 2021). The plaintiff moved from New York to Arizona in October 2016 and registered to vote at the Arizona Department of Motor Vehicles on October 11, 2016. *Id.* Isabel's vote was not counted because he registered one day after the deadline. *Id.* at 970.

The county defendants alleged that the plaintiff lacked standing because his injury was not fairly traceable to their conduct. *Id.* at 972. The county defendants contended that the plaintiff had failed to meet the causation element because the county did not set the voter registration deadline. *Id.* The county defendants argued that the Secretary of State or the plaintiff himself caused the plaintiff's injuries. *Id.*

The district court found that the county defendants implemented the policy that resulted in the exclusion of the plaintiff's ballot. *Id.* The plaintiff's injury, therefore, was fairly traceable to the County Defendants' conduct because "it places the County Defendants in the line of causation that ultimately resulted in his injury." *Id.* at 973 (internal citation and quotation omitted).

The court in *Isabel* distinguished *Kurtz v. Baker*. 829 F.2d 1133 (D.C. Cir. 1987). The plaintiff in *Kurtz* sued the chaplains of the United States Senate and House of Representatives after his request to give a non-religious speech to Congress was denied. *Id.* at 1134–35. The D.C. Circuit determined the plaintiff

10

lacked standing because the chaplains lacked authority to approve such a request. *Id.* at 1142. The D.C. Circuit reasoned that the plaintiff could have established traceability if the House or Senate had directed "their chaplains not to admit Kurtz to the benefits otherwise available to him" or if "the chaplains were implementing an unconstitutional directive from their superiors." *Id.* at 1144–45. The *Isabel* court noted that the plaintiff in *Kurtz* "sued the wrong people." 394 F. Supp. 3d at 973. The *Isabel* court distinguished the facts of the case before them from the facts of *Kurtz* because "the County Defendants [ ] enforce[ed] and implement[ed] the Secretary's allegedly unconstitutional directives. *Id.*

Defendants' conduct here does not place them in the line of causation that ultimately resulted in Kraske's injury. In *Doe*, like here, the plaintiff's injury was not caused by the Clerk because the Clerk lacked any authority to grant or deny the plaintiff's name change. *Doe*, 883 F.3d at 797. The plaintiff's injury in *Doe*, the denial of the plaintiff's name change, rested with the official who had the authority to reject the change. The authority to deny Kraske's request to relocate to Indiana with her child did not rest with Solem, Lashinski, Vining, or the State of Montana. Kraske's ultimate injury, the denial of her request to relocate with her child, arose from the Montana state district court's decision.

These factors distinguish Kraske's claim and the claims of the plaintiff in *Doe* from *Isabel*. In *Isabel*, the County Defendants acted to enforce a deadline that

11

denied the plaintiff a legal right — the right to vote. The Clerk took no action to enforce a statute that denied the plaintiff in *Doe* a legal right to a name change. No Defendants made a decision or acted to enforce or implement an unconstitutional directive or policy that denied Kraske a legal right unlike the actions of the county defendants in *Isabel*. The Montana state district court denied her request to move her child with her to Indiana. The Montana state district court was not acting under the directive of any superior. The Montana Supreme Court affirmed the Montana state district court decision. *In re Solem*, 464 P.3d 981 (Mont. 2020).

The causal chain in the present case fails to establish Article III standing. Plaintiff argues that the Lashinski letter prompted the Montana state district court to deny her request to relocate to Indian with her child. (Doc. 1, ¶ 55.) This denial to relocate her daughter ultimately represents the injury that she alleges. This injury meets the first element of standing. Plaintiff fails to show, however, that the Lashinski letter caused this injury.

Plaintiff asserts that the chain of causation is simple. Defendants engaged in tortious behavior by soliciting the letter from Lashinski. (Doc. 1, ¶¶ 56–88; ¶¶ 17–19; Doc. 15–2, at 24.) The letter contained false information. (Doc. 1, ¶ 21.) The Montana state district court relied on the Lashinski letter in its decision. (*Id.*, ¶ 27; Doc 15-3 at 7.) Lashinski had no authorization to write the letter. (Doc. 1, ¶ 41;

Doc. 21-4.) Kraske learned she was the victim of a conspiracy. (Doc 1., ¶ 51; Doc. 21-4.)

The causal chain proves not so simple. Kraske has not shown that the Montana state district court relied on the Lashinski letter. The Montana state district court references only indirectly the letter in Paragraph 65 of its finding of facts. (Doc. 15–1 at 9.) The findings of facts discuss Ms. Corbally, who wrote the *Guardian Ad Litem* ("GAL") report and received a copy of the Lashinski letter:

> [a]ccording to Ms. Corbally, Michael provided her "a letter from child protective services saying that [Rogers] was a safe parent, and he indicated that he believes that E.S.'s fears were being driven by Aleisha sharing too much information with E.S. about Trisha's past, which caused E.S. to be unnecessarily fearful of the situation."

(*Id.*; Doc. 15–3 at 7.) The Montana state district court makes no other reference to the letter, and neither party introduced the letter into the record. (Doc. 15–1; Doc. 15 at 16–17; Doc. 23 at 18–19.)

The Lashinski letter appears to have supported Kraske's position rather than to have contributed to the judgment against Kraske. Ms. Corbally received a copy of the Lashinski letter and referenced it directly in the GAL report. (Doc. 15–3 at 7.) The GAL report ultimately recommended that Plaintiff be allowed to relocate to Indiana with her daughter. (*Id.* at 17.) The Montana state district court ruled differently. (Doc. 15–1 at 20.) Plaintiff may have a more plausible causal connection if the GAL report had recommended denying Kraske's request. The

13

Court still finds the hypothetical too tenuous to support Article III standing. The Lashinski letter's subject was Patricia Rogers, with whom Solem was in a relationship. The Lashinski letter makes no mention of Solem himself. (Doc. 15–3 at 7.)

The letter discussed Rogers's fitness to parent a different child and did not mention the Plaintiff, E.S., or Solem. (*Id.*) Solem and Rogers were no longer in a relationship when the Montana state district court issued its decision denying Plaintiff the ability to relocate to Indiana with her child. (*Id.*) The Court fails to see how the Lashinski letter "fairly can be traced" to Defendants and how Plaintiff's injury, the denial of her ability to relocate to Indiana, is not "the independent action of some third party," in this case, the Montana state district court. *Simon*, 426 U.S. at 41–42.

## II. Leave to Amend

The Court will dismiss Plaintiff's claims for failure to state a claim under Fed. R. Civ. P. 12(b)(6). "'Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment.'" *Maya v. Centex Corp.*, 658 F.3d 1060, 1072 (9th Cir. 2011) (quoting *Krainski v. Nev. ex rel. Bd. of Regents of Nev. System of Higher Educ.*, 616 F.3d 963, 972 (9th Cir. 2010)); *Smith v. Johnson*, No. 22-35766, 2023 U.S. App. LEXIS 27560, at *1 (9th Cir. Oct. 17, 2023) (remanding to correct judgment to dismissal without

prejudice) (unpublished). Plaintiff's complaint suffers from a failure to plead sufficient factual bases for Plaintiff's claim. Plaintiff has failed to plead facts supporting any plausible connection between the injury and Defendants' actions. Plaintiff's complaint does not plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" under their claims. *Iqbal*, 556 U.S. at 678. Additional factual allegations could cure the deficiencies in the complaint. The Court will grant Plaintiff leave to amend her complaint.

## CONCLUSION

The Court determines that Plaintiff's complaint fails to establish a plausible causal link between Defendants' actions and Plaintiff's injury. The Court will grant Defendant Solem's motion to dismiss and dismiss Plaintiff's claims without prejudice. The Court will grant Defendant State of Montana, Lashinski, and Vining's motion to dismiss and dismiss Plaintiff's claims without prejudice.

## ORDER

Accordingly, **IT IS ORDERED:**

1.) Defendant Solem's Motion to Dismiss (Doc. 14) is **GRANTED**.

2.) Defendants State of Montana, Vining, and Lashinski's Motion to Dismiss (Doc. 22) is **GRANTED**.

3.) Plaintiffs' claims against Solem, State of Montana, Lashinski, and Vining are hereby **DISMISSED** without prejudice.

DATED this 16th day of October, 2024.

_____
Brian Morris, Chief District Judge
United States District Court